

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DS:AH/MG
F.#2013R00312

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 23, 2013

By Hand Delivery and ECF

The Honorable William F. Kuntz II
United States District Court
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Mohammad Ajmal Choudhry
            Criminal Docket No. 13-150 (WFK)

Dear Judge Kuntz:

      The government respectfully submits this letter to further address several issues raised at the detention hearing held on April 22, 2013 ("Detention Hearing"). As indicated in the government's prior submission dated April 8, 2013, and as expressed at oral argument during the Detention Hearing, the government continues to assert that no bail conditions would reasonably ensure the safety of the community and the appearance of the defendant in future proceedings in this case.

I.    The "Community" For Purposes of the Bail Reform Act

      As this Court is aware, under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or poses a risk of flight or obstruction of justice. 18 U.S.C. § 3142(e). At the Detention Hearing, the Court queried whether any courts have addressed the definition of "community" with respect to the Bail Reform Act, and whether that term encompasses foreign jurisdictions. In United States v. Hir, 517 F.3d 1081 (9th Cir. 2008), the Ninth Circuit specifically addressed this question and noted that it was an issue of first impression. In Hir, the defendant was charged with providing material support to terrorists located abroad, among other crimes, and he was ordered detained based on the district court's determination that he posed a danger to a community outside of the United States, including foreign countries. Id. at 1085. On appeal, the

April 23, 2013
Page 2

defendant argued that the Bail Reform Act did not permit pretrial detention of an individual who posed a danger only to a community outside of the United States.  Id. at 1086.  The Ninth Circuit disagreed, holding that "where . . . a defendant is charged with an offense that had a significant adverse effect on a community abroad, we see no justification for preventing a court, for bail purposes, from considering the continuing risk to that community that might be posed by the defendant's pre-trial release."  Id. at 1088.  In so holding, the Ninth Circuit noted that "limiting the definition of community to the jurisdiction in which the crime occurred . . . would lead to arbitrary and absurd results," including the inability to consider threats posed to individuals in other jurisdictions and it "would [not] make sense to conclude . . . that the relevant community must be a community located within the geographic bounds of the United States."  Id. at 1087-88; see also United States v. Al-Arian, 280 F.Supp.2d 1345, 1357 (M.D. Fla. 2003) (considering defendants' work for the Palestinian Islamic Jihad Shiqaqi Faction, whose goal was to destroy Israel, in finding that defendants were a danger to the community).

Moreover, in this case, while the defendant certainly poses a threat to the individuals he believes facilitated his daughter's escape from Pakistan, as well as any members of their family located in the United States or abroad, the government does not concede that the danger posed by the defendant is limited to those individuals.[1]  Rather, the defendant's persistent, violent threats indicate that he presents a danger to any individual who affronts him or his family, which includes potential witnesses other than the individuals who, according to the defendant, assisted his daughter.

II.   The Proposed Sureties are Inadequate to Secure the Defendant's
      Continued Appearance

While the defendant has not proposed any specific bail package, the defendant has offered a number of potential sureties who have been interviewed by Pretrial Services.  For the reasons set forth below, the government does not believe the proposed sureties, even collectively, present adequate security to ensure the defendant's appearance in Court.

Pretrial Services interviewed eighteen prospective

---

[1]   For safety reasons, the government will not reveal the present locations of those individuals.

April 23, 2013
Page 3

sureties.[2]  Of the eighteen people interviewed, four were found to be unsuitable as sureties by Pretrial Services and an additional six were found to be appropriate for purposes of moral suasion only.  Accordingly, only eight of the eighteen people interviewed were determined by Pretrial Services to be financially responsible sureties.  The majority of those eight individuals, however, reported modest income ($25,000 or less) and little to no other assets.  Such circumstances would not allow the government to meaningfully impose the threat of collection were the defendant to flee.  Furthermore, it is not clear from the Pretrial Services report whether the sureties were informed of the charges pending against the defendant – information which, given the nature of the crimes charged and the possible sentencing exposure – may influence each surety's willingness to sign a bond on the defendant's behalf.

Moreover, according to the report by Pretrial Services, the defendant's son, Shakeel Choudhry, is the only surety who reliably indicated that he would be willing to post property to secure the defendant's bond.[3]  Because the government has reason to believe that Shakeel Choudhry may have potential criminal liability with respect to the matters under investigation, however, Shakeel Choudhry is not a suitable surety.  Even assuming, arguendo, that Shakeel Choudhry were a suitable surety, he apparently did not provide information to Pretrial Services substantiating his claims as to the values of the properties he proposed posting.

---

[2]     Although the government requested that defense counsel facilitate interviews of potential sureties by the government, defense counsel affirmatively declined to do so.  Nonetheless, the government was able to interview a limited number of sureties without the facilitation of defense counsel.

[3]     According to the Pretrial Services report, one other potential surety, identified in the Pretrial Services report as suretor No. 16 ("Suretor No. 16"), indicated to Pretrial Services that he was willing to post a property that he owns in Brooklyn as collateral for the defendant's bond.  Because Pretrial Services was unable to verify his ownership of the property or the reported value, Pretrial Services determined that it was not suitable for Suretor No. 16 to post the property as collateral.  Additionally, Pretrial Services noted in their report that Suretor No. 16 expressed some reservation about signing the bond, which militates against Suretor No. 16 as a reliable surety.

April 23, 2013
Page 4

III. Conclusion

      For the foregoing reasons, the government respectfully requests that the Court deny the defendant's request for release on bail.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                           By:       /s/
                                          Amanda Hector
                                          Margaret Gandy
                                          Assistant U.S. Attorneys
                                          (718) 254-6212
                                          (718) 254-6213

cc:  Clerk of the Court (by ECF)
     Defense counsel (by ECF)