EN:AH/MG/RT
F.#2013R00312

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                            13 CR 150 (S-1) (WFK)

MOHAMMAD AJMAL CHOUDHRY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Amanda Hector
Richard Tucker
Margaret Gandy
Assistant U.S. Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The defendant is charged in a three-count superseding indictment ("Indictment") with conspiracy to commit murder in a foreign country, in violation of 18 U.S.C. § 956(a)(1), transmission of threats over the telephone, in violation of 18 U.S.C. § 875(c), and visa fraud, in violation of 18 U.S.C. § 1546(a).  By motion dated May 5, 2014 ("Def. Mot."), the defendant moves to suppress his post-arrest statements.  The crux of the defendant's argument is that his statements should be suppressed because he was questioned by agents both while in custody but prior to being given Miranda warnings, and after he invoked his right to counsel.  As set forth below, the defendant's motion to suppress should be denied in its entirety because 1) he was not questioned, nor did he make statements, prior to being given Miranda warnings, and 2) after he was advised of his Miranda rights and invoked his right to counsel, he spontaneously made a series of incriminating statements unprompted by any interrogation.  An evidentiary hearing should be scheduled, however, to resolve factual disputes regarding the defendant's motion to suppress his post-arrest statements.

STATEMENT OF FACTS

On September 20, 2013, a federal grand jury sitting in this District returned the Indictment charging the defendant with conspiracy to commit murder in a foreign country, transmission of threats over the telephone, and visa fraud.  The charges stem from the defendant's actions following his daughter Amina Ajmal's refusal to acquiesce to her father's demands concerning her marriage to an arranged spouse.  After her subsequent flight from Pakistan to the United States, the defendant orchestrated the murder of family members of Shujat Abbas, the individual the defendant blamed for his daughter's disobedience.  Trial is scheduled for June 16, 2014.

1

The government anticipates that an agent would testify to the following facts concerning the day of the defendant's arrest, in sum and substance, at a hearing on the defendant's motion. The defendant was arrested at approximately 8:45 pm at his residence located at 817 Foster Avenue in Brooklyn, New York pursuant to a federal arrest warrant. Following his arrest, the defendant was transported to the Department of Homeland Security's field office ("HSI headquarters") in New York, New York for processing. While the defendant was being transported, agents asked him standard pedigree questions necessary for processing. After the defendant arrived at HSI headquarters and was given the opportunity to drink water and use the restroom, agents advised the defendant of the reason for his arrest and asked him whether he understood English. In response, the defendant indicated that he was able to both speak and understand English. Agents also asked the defendant whether he was able to read and write in English, and he replied affirmatively. Notwithstanding the defendant's command of English, agents informed the defendant that he should immediately ask for clarification should he have any questions or concerns about his ability to communicate and that, if needed, an interpreter would be made available. The defendant acknowledged that he understood both statements.

Agents then orally gave <u>Miranda</u> warnings to the defendant, who stated that he understood them. After giving the defendant oral <u>Miranda</u> warnings, agents presented the defendant with a printed "Statement of Rights" form ("Form") setting forth the same warnings. Agents asked the defendant to read the Form aloud, line by line, and to orally summarize each line to ensure his comprehension. Next to each line he summarized, agents asked the defendant to write his initials, which he did. Agents then asked the defendant whether he was willing to participate in a voluntary, custodial interview. The defendant replied, "I can talk about the visa

but not about Pakistan." Agents informed the defendant that, should he wish to communicate with agents, he would have to sign the Form. The defendant then invoked his right to counsel.

After he invoked his right to counsel, agents did not ask the defendant any questions. Instead, agents informed the defendant that he would be fingerprinted, processed, transported to a holding facility, and then brought to court the following morning for his arraignment. Agents also told the defendant that he would have an opportunity to speak to a lawyer in the morning prior to any court proceedings. The defendant indicated that he understood.

As agents prepared to escort the defendant to the processing area, the defendant spontaneously began speaking to agents. At that point, agents reminded the defendant that he had asked to speak to an attorney. Unprompted by any questions from the agents, the defendant continued to speak. In doing so, the defendant made various incriminating statements relevant to the charges against him, including, in sum and substance, that he had filed [visa] paperwork [for Amina Ajmal's arranged spouse], that he "may" have threatened the life of the individual whom he held responsible for his daughter's disobedience, and that his brother Mohammad Akmal Choudhry "might have been" at the scene of the shooting of Abbas's relatives in Pakistan earlier that day.

While the defendant was speaking, agents reminded him more than once of his request not to be interviewed without an attorney and of the fact that they had not asked him any questions, nor would they. Nevertheless, the defendant continued to speak to agents. At some point, an agent suggested that if the defendant wished to continue speaking to agents, he consider signing the Form. The defendant then repeated that he was willing to talk about the visa but not

3

about events in Pakistan, and indicated that he wanted to speak with agents once he had a lawyer present. At that point, agents escorted the defendant to the processing area.

ARGUMENT

The defendant seeks to suppress statements he made to agents while in custody on February 25, 2013, on the basis that those statements were obtained in violation of the Fifth Amendment to the United States Constitution. (Def. Mot. at 1). In support of that argument, the defendant makes two allegations. First, he asserts that he was questioned by agents after he was arrested outside his home and while being transported in a law enforcement vehicle, prior to being given any Miranda warnings. (Def. Mot. At 2). Although the defendant seeks to suppress these alleged pre-Miranda statements, he does not indicate what questions he was asked or what responses he provided. Second, the defendant asserts that after he arrived at HSI headquarters, he was given Miranda warnings and invoked his right to counsel, after which agents continued to question him and engaged in "functionally equivalent" actions that led him to make incriminating statements. (Def. Mot. at 2). The defendant does not indicate what "functionally equivalent" actions agents took to induce him to make incriminating statements. For the reasons that follow, the defendant's motion should be denied in its entirety following a hearing at which the relevant facts can be established.

    I.    The Defendant Was Not Questioned Outside His Home or During Transportation to HSI Headquarters and Was Properly Given *Miranda* Warnings In Anticipation of Agents' Efforts to Question Him After he Arrived at HSI Headquarters

        A.  Legal Standard

It is well-established that, prior to any custodial interrogation, a defendant must be informed of his Fifth Amendment rights. Miranda v. Arizona, 384 U.S. 436 (1966). Any waiver

4

of those rights by a defendant must be made "voluntarily, knowingly, and intelligently." Id. at 445-45. Moreover, even if a defendant waives those rights, law enforcement officers must immediately cease questioning a defendant if, at any point during an interrogation, a defendant indicates that he wishes to consult an attorney before continuing to speak. Id.; see e.g., James v. Arizona, 469 U.S. 990, 992-93 (1984) ("When an accused in custody requests the assistance of counsel the Fifth Amendment requires that all interrogation must cease until an attorney is present.") (internal quotations omitted); U.S. v Collins, 462 F.2d 792, 796 (2d Cir. 1972) ("We recognize that in Miranda the Court said that the police may not ignore a defendant's stated wish to have any interrogation cease."); U.S. v. Gotay, 844 F.2d 971, 974 (2d Cir. 1988) ("[I]f a suspect requests counsel, all interrogation must cease until an attorney is present.").

### B. Discussion

As indicated above, the government anticipates that an agent present during the arrest and transportation of the defendant would testify that the defendant was neither questioned by agents at the scene of arrest nor during transportation to HSI headquarters, other than standard pedigree questions incident to processing.[1] The government further anticipates that an agent would testify that, after the defendant arrived at HSI headquarters and prior to any questioning by agents, the defendant was properly notified of his Miranda rights orally and in writing and agents made scrupulous efforts to ensure that he understood those rights. After being advised of those rights, the defendant declined to waive his Miranda rights and invoked his right to counsel. Based on the defendant's invocation, agents refrained from questioning him. In fact, because of the

---

[1] See, e.g., United States v. Brown, 2008 WL 4585323 at *3 (2d Cir. Oct. 14, 2008) (holding that there is no violation of a defendant's Miranda rights in the routine pedigree questions posed as part of standard police booking procedures); United States v. Carmona, 873 F.2d 569, 573 (2d Cir. 1989) (holding that routine booking questions do not violate Miranda).

defendant's invocation, there was no interrogation of the defendant whatsoever.

    II.    Defendant's Spontaneous Post-*Miranda* Statements Were Not the Product of Interrogation and Are Admissible

    A. Legal Standard

It is well-established that a defendant who asserts his Miranda rights cannot be interrogated without counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (emphasis added). For this reason, the fact that a defendant asserts his right to counsel prior to making post-arrest statements is not dispositive of the issue of whether or not those statements are admissible against him. Where a defendant invokes his right to counsel but then spontaneously reinitiates communication with law enforcement authorities, those spontaneous statements are admissible. See, e.g., United States v. Montana, 958 F.2d 516, 519 (2d Cir. 1992) (where defendant initially asserted his Miranda rights but subsequently stated that "he could not believe he was in all this trouble for $50," the defendant's "spontaneous and unsolicited declaration was admissible"); United States v. Colon, 835 F.2d 27, 30-31 (2d. Cir. 1987) (finding spontaneous statements and response to subsequent question from law enforcement officer admissible because statements "were not the product of an interrogation or its functional equivalent" despite fact that defendant had previously invoked his right to an attorney); United States v. Annuci, 2007 WL 1310156 at *6 (S.D.N.Y. May 3, 2007) (holding that where defendant initially declined to speak with law enforcement officers and requested an attorney but later made a series of spontaneous, inculpatory statements while he was being transported for processing, statements were admissible because they were "the result of a conversation initiated by the Defendant, were volunteered and not the product of custodial interrogation").

B.  Discussion

As indicated above, the government anticipates that an agent present when the defendant was provided with Miranda warnings and thereafter would testify that the defendant was not asked any questions by agents.  Rather, the defendant invoked his right to counsel and then proceeded to spontaneously make various statements relevant to the charged offenses.  Moreover, the defendant continued to speak despite repeated reminders from the agents that he had invoked his right to counsel and that they would not, therefore, pose any questions to him.  Because the defendant's post-Miranda communications were spontaneous and did not occur as a result of any questioning by law enforcement officers, they are admissible.[2]  Edwards, 451 at 484-85; Montana, 958 F.2d at 519; Colon, 835 F.2d at 30-31.

III.   The Court Should Hold an Evidentiary Hearing

An evidentiary hearing is required to resolve factual disputes raised in the defendant's motion to suppress his post-arrest statements.  See United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (factual disputes between the parties regarding Miranda cannot properly be resolved without an evidentiary hearing).  The government anticipates that, at such a hearing, the evidence will show that the defendant was advised of his Miranda rights, invoked his right to

---

[2]   With respect to actions that are "functionally equivalent" to interrogation, in Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Supremem Court held that interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Although the defendant asserts in his motion that the agents engaged in conduct "functionally equivalent" to interrogation, he does not provide any further information to substantiate this allegation.  (Def. Mot. at 3.)  As indicated above, the government anticipates that, after a hearing, the Court will conclude that nothing that the agents did or said constituted interrogation.  In fact, the opposite is true: agents continually reminded the defendant that he had invoked his right to counsel and that they, therefore, would not ask him any questions.

counsel, and thereafter, without any questioning by agents, spontaneously made incriminating statements that are admissible at trial.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that, after a hearing, the Court deny the defendant's motion in its entirety.

Dated:     Brooklyn, New York
             May 16, 2014

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney
                                      Eastern District of New York

                            By:   /s/Amanda Hector
                                      Amanda Hector
                                      Richard Tucker
                                      Margaret Gandy
                                      Assistant U.S. Attorneys