UNITED STATES DISTRICT COURT
EASTERNDISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA


    -against-                                  13 Cr. 150 (WFK)


MOHAMMAD AJMAL CHOUDHRY,

                    Defendant.
-----------------------------------------------------x




SENTENCING MEMORANDUM
ON BEHALF OF MOHAMMAD AJMAL CHOUDHRY




YING STAFFORD, ESQ.
Attorney At Law
276 Fifth Avenue, Suite 501
New York, NY 10001
(212) 689-3858
ying@staffordesq.com
Attorney for *Mohammad Ajmal Choudhry*

**Introduction**

This sentencing memorandum is respectfully submitted on behalf of defendant Mohammad Ajmal Choudhry in the above captioned case. Mr. Choudhry's sentencing is currently scheduled for May 7, 2015, at 12 noon. The defendant Mohammad Ajmal Choudhry was detained on February 26, 2013, pursuant to an arrest warrant in connection with a complaint filed in the Eastern District of New York. Subsequently, on March 11, 2013, a Two Count indictment was filed against the defendant charging him intentionally presenting and filing an I-130 application for Alien Relative with the United States Department of Homeland Security which contained false statements and failed to contain any reasonable basis in law and fact, in violation of Title 18 U.S.C. § 1546(a). On September 20, 2013, a Three Count superseding indictment was filed against Mr. Choudhry followed by a Second Superseding indictment filed on June 6, 2014. On June 23, 20014, Mr. Choudhry trial commenced and on July 14, 2014, the jury returned a guilty verdict to all counts of the superseding indictment.

I.      Preliminary Statement

Defendant, Mohammad Ajmal Choudhry, respectfully requests that this Honorable Court impose a sentence of reasonable measure in light of <u>Gall v. United States</u>, 552 U.S. 38 (2007), <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), and the sentencing factors set forth in 18 U.S.C. § 3553(a). A sentence below the specified guidelines would be just punishment, to promote respect for the law, and satisfy the other sentencing purposes of § 3553(a) far better than would a sentence suggested by Probation.

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

<u>Gall v. United States</u>, 128 S. Ct. 586, 598 (2007), quoting <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996).

II.     Introduction

With great respect for the independence and integrity of this Court, counsel for Mr. Choudhry submits that in fashioning an appropriate sentence in this case, Your Honor would weigh not only the seriousness of the offense conduct to which Mr. Choudhry has been convicted. Counsel respectfully submits that Your Honor also consider the fact that throughout his adult life, Mr. Choudhry has devoted his talent, his energy, all of his resources and so much of his time to his family and his community.

At the outset, counsel would like to acknowledge the facts and circumstances of this case. It is clear to Mr. Choudhry and his counsel that the conduct engaged in by Mr. Choudhry to be very serious with the most tragic consequences. Neither Mr. Choudhry nor his counsel quarrel with that characterization. Indeed, Mr. Choudhry will have to live with the consequences of his actions for the rest of his life regardless of the sentence this Court imposes.

Yet, Mr. Choudhry is a man that has spent his life devoted to his family and in service to his community.  This is substantiated by the numerous letters that have been submitted on behalf of Mr. Choudhry. There is no doubt that Mr. Choudhry was a law abiding citizen prior to his arrest. Further, it affirmatively shows that Mr. Choudhry's conviction is an aberration in an otherwise upstanding life. Thus, we bring to the Court's attention the words of Judge Rakoff in considering the overall life of Mr. Choudhry.

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

Adelson, 441 F.Supp.2d at 513-514 (emphasis added). And, the recent words of Pope Francis on

October 23, 2014 regarding crime and punishment of the elderly.

> "All Christians and people of good will are thus called today to struggle not only for abolition of the death penalty, whether it be legal or illegal and in all its forms, but also to improve prison conditions, out of respect for the human dignity of persons deprived of their liberty. And this, I connect with life imprisonment," he said. "Life imprisonment is a hidden death penalty…"

> The pope said criminal penalties should not apply to children, and should be waived or limited for the elderly, who "on the basis of their very errors can offer lessons to the rest of society. We don't learn only from the virtues of saints but also from the failings and errors of sinners."

See http://www.catholicnews.com/data/stories/cns/1404377.htm

Mr. Choudhry's life before his arrest and conviction is best described by those who knew

him. The following statements are only a portion of the letters that have been submitted on

behalf of Mr. Choudhry.

- "I got a big family here in Pakistan with 7 members with a payslip of peon in Pakistan, it was very difficult for me to brought up my family if Mr. Ajmal was not there. He always send me money to help me financially after every couple of months…"

- "I would like to elaborate a bit about the time we spent together here in Pakistan. He is a person who loves to help the needy and poor people in the village and in broader prospectus in the community. People in the village and in surrounding population speak very high about the kindness and generosity of Mr. Ajmal Choudhry. He has given great sum of money to social works, like community center, betterment of girls' school in the village. And personally speaking as a good friend, he never disappointed me whenever I needed him in any sphere of my life."

- "After the death of his first wife Mr. Choudhry took care of his five children and their well-being including taking them to the doctor ensuring that their health care needs were met. "

- "I am working with Mr. Choudhry from the last 12 years in the same profession of driving. During working with Mr. Choudhry, I closely look into his personality and work ethics. I am very happy to share my

impression with you. Mr. Choudhry is well regarded among his fellow drivers as a person of high integrity and honesty. I hope this statement will give you an idea of his good character and behavior with others and help him to prove this unusual occurrence.

- "In the time that I have known him, he has shown to be a kind and respectful man. As a member of our cultural community, he has proven to be a loyal and loved member that has always taken part in every one of our cultural events. The members of our cultural community have known him to be a helpful advisor and friend Mr. Choudhry has shown peace instead of violence when it came to problems."

- "He [Mr. Choudhry] has always been soft spoken towards his customers and other drivers. I can plead confidently that he is a crucial part in our society.

- Mr. Choudhry does not fail to be an active member of our society ad community. Whenever anyone needs help, he gives valuable advice and proves to be very helpful.

- "Mr. Choudhry has earned the status of being one of the honored, loved, and loyal members. Mr. Choudhry has been seen in our cultural events as a loyal member without fail."

- "He has put meticulous effort and love in raising his children."

- "He is a man of good moral character. "

- "He participated in a community counseling group providing advice to people in his community. "

- "I can certify him [Mr. Choudhry] as a very nice man who bears a very good moral character."

- "I know his whole family very well. I found him [Mr. Choudhry] always very helpful and kind hearted man. I can certify him as a very sincere, generous and caring towards his friends and family. He has been very beneficial to the society. "

- "He [Mr. Choudhry] is hard working, devoted, dedicated and self-made person…He is a very well respected person in the community and also eager to help people in need and distress. "

- "He [Mr. Choudhry] is always active in community affairs and gatherings. I find him to be friendly, courteous, polite and helpful person. I have never witnessed him argue or ill-mannered with anyone. I also

have never heard of someone speak of him negatively without his presence. …In my mind and according to all my experiences with him, he is a very peaceful ad helping person and it is impossible for me to see him linked and involved in any crime."

- "He [Mr. Choudhry] was very sincere to his work. He was very generous and caring towards [the] poor[s] of the society."

- "He [Mr. Choudhry] is dependable honest, responsible and humble person. He is soft spoken, kind-hearted towards his colleagues. I know him as a very hard working and caring person."

Accordingly, we respectfully request that the Court consider the good that Mr. Choudhry has contributed to society as it considers an appropriate sentence for Mr. Choudhry.

## Mr. Choudhry's Age is A Significant Factor
## under § 3553(a) Sentencing Factors

On the date of his sentencing, Mr. Choudhry will be 62 years old. An extended term of imprisonment will likely be a life sentence for Mr. Choudhry. Thus, Mr. Choudhry respectfully requests a sentence that is substantially below the Guidelines that takes into account the alternative of strict home confinement. Mr. Choudhry's request for a sentence below the guidelines is based on his personal and family history and characteristics, his low risk of recidivism, the need for the sentence imposed to provide him with adequate rehabilitation and the lack of a need to protect the public from him. Additionally, Mr. Choudhry is not a United States citizen and is subject to deportation immediately following his incarceration.

Although, under the advisory guidelines, age is "ordinarily" not relevant pursuant to USSG §5H1.1, but maybe so in unusual cases or in combination with other factors. There is powerful support that age is a significant factor. In fact, the Commission has found "recidivism rates decline relatively consistently as age increases." *See* U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative

Mandate (May 2004). Post- <u>Booker</u> and <u>Rita</u>, a sentencing court may consider defendants' age under § 3553(a). <u>Gall v. U.S.,</u> 128 S. Ct. 586, 593, 599 (2007)(affirming sentence of probation, in part, for defendant's age at the time of the offense conduct); <u>U.S. v. Dusenberry</u>, 9 F.3d 110 (6th Cir. 1993) (downward departure granted due to defendant's age and medical condition – removal of both kidneys requiring dialysis three times a week);<u>U.S. v. Clark,</u> 289 Fed. Appx. 44 (5th Cir.2008)(court applied a below-guidelines term of 190 months for methamphetamine conspiracy conviction because defendant's age made him unlikely to commit further crime upon release); <u>U.S. v. Polito</u>, 215 Fed. Appx. 354, 357 (5 Cir. 2007)(*per curiam*)(upholding sentence of probation in child pornography case when use began during adolescence); <u>U.S. v. Carter</u>, 538 F.3d 784 (7 Cir. 2008)(affirming24-month sentence for money laundering where GR was 87-th 108 months based partly on finding that defendant, at age 61, posed a lower recidivism risk); <u>U.S. v. Chase</u>, 560 F.3d 828 (8 Cir. 2009) (defendant's advanced age, health, and employment history could support downward variance even if it didn't support formal departure);<u>U.S. v. Gray</u>, 453 F.3d 1323 (11th Cir. 2006) (variance from 151 months to impose 72 months in distribution of porn case was reasonable in light of defendant's history and characteristics, i.e., the defendant' was 64, had never molested a child, suffered from depression and had attempted suicide several times). <u>U.S. v. Stern</u>, 590 F.Supp.2d 945 (N.D. Ohio, Dec. 19, 2008) (court imposed 12 months and a day rather than the 46-57-month guideline range for child porn possession in part because of the adolescent age at which Stern began viewing and became addicted to portrayals of subjects his own age, citing scientific literature supporting different treatment of juveniles, and distinguishing Stern from the typical child porn defendant); <u>U.S. v. West</u>, 552 F. Supp. 2d 74 (D.Mass. 2008) (judge imposed 180 months for possessing cocaine with intent to distribute instead of career offender range of 262-327 months, in part because West's sales of about $750.00 worth of cocaine to an agent who wanted to get him into inform

on someone else did not merit what could amount to a life sentence for this 38-y ear-old);U.S. v. Villanueva, 2007 WL4410378 (E.D. Wis. Dec. 14, 2007)(Courts are able to base variances on factors normally discouraged under the Guidelines including age and physical condition.);*U.S. v. Baron*, 914 F. Supp. 660 (D.Mass. 1995) (downward departure to probation from advisory range of 27-33 months for 76 year old defendant in bankruptcy fraud whose medical problems would worse in prison); *U.S. v. Roth*, 1995 WL35676, at *1 (S.D.N.Y. Jan.30, 1995) (63-year-old with neuromuscular disease had "profound physical impairment" warranting downward departure).

The Department of Justice has found that "management problems with elderly inmates, are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment." *See Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Dept. of Justice National Institute of Corrections, 9, 10 (2004). The report notes that first time offenders are "easy prey for more experienced predatory inmates." *Id.*at 10. The elderly are defined throughout the report as age 50 or older.

Further, we ask Your Honor to consider the fact that Mr. Choudhry will be deported from this country after he has served his sentence. This will be an even more severe punishment than prison because he will not be able to care for and be part of his family that he has worked so hard to be proud American citizens. His legacy of providing for his family in Pakistan is over. See U.S. v. Pacheco-Soto, 386 F. Supp. 2d 1198 (D.N.M.2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum guideline term of 74 months, in light of his ineligibility for early release, minimum security prison, or credits for participation in residential drug or alcohol abuse program). There is no limit on the background and character information that this Court can consider in imposing an appropriate sentence for Mr. Choudhry. 18 U.S.C. §

3661; see also§ 3553(a)(1). When determining a sentence, no unusual circumstances need exist. United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005). In this post-Booker realm, all that is necessary to sustain a sentence outside the guideline range is "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that [s]he has selected is indeed appropriate for the particular defendant." Id. Thus, as even the PSR notes, Mr. Choudhry's lack of criminal record and close family ties is extremely relevant for purposes of sentencing. (PSR ¶ ¶ **-**)

In United States v. Collins, 122 F.3d at 1307, the defendant was sixty-four years old, and suffered from "heart disease, high blood pressure, ulcers, arthritis and prostatitis." In light of Collins's "old age and ill health," the court sentenced him to forty months of incarceration for distribution of cocaine rather than the one hundred and fifty-one to one hundred and eighty-eight months recommended by the Sentencing Guidelines. In United States v. Hildebrand, 152 F.3d 756 (8th Cir. 1998) *overruled in part by* Whitfield v. United States, 543 U.S. 209 (2005), the court sentenced the seventy year old defendant to five years of probation with six months in a community correctional facility for mail fraud and money laundering in lieu of the fifty-one to sixty-three months recommended by the Sentencing Guidelines. The court did so even though "the Bureau of Prisons could manage the defendant's conditions." *Id.* In United States v. Jackson, 14 F. Supp. 2d 1315, 1316 (N.D. Ga. 1998), the court sentenced the seventy-six year old defendant to eighteen months of imprisonment for eighty-three counts of mail fraud rather than the thirty-three to forty-one months recommended by the Sentencing Guidelines. The defendant suffered from severe osteoarthritis, a torn rotator cup, and chest pains. 14 F. Supp. 2d at 1318-1319. Even though the court recognized the Bureau of Prisons would be able to accommodate the defendant's needs, 14 F. Supp. 2d 1315 at 1321, it concluded that the "combination of ailments" justified the departure. 14 F. Supp. 2d 1315 at 1322. In United States

v. Barbato, No. 00 CR 1028, 2002, WL 31556376 (SDNY Nov. 15, 2002), the eighty-one year old defendant suffered "from a variety of serious medical ailments, including hypertension, carotid artery disease and coronary artery disease." *1. Instead of sentencing the defendant to the twenty-four to thirty months the Guidelines had recommended for his loan sharking conviction, the court sentenced the defendant to twelve months of home confinement and two years of supervised release. *5 The court justified the departure because of the defendant's "medical condition and his advanced age." Id. In United States v. Willis, 322 F. Supp. 2d 76, 78 (D. Mass. June 23, 2004), the court sentenced the sixty-nine year old defendant to probation with six months of home detention for income tax offenses. The court imposed that sentence rather than the twenty-one to twenty-seven months recommended by the Sentencing Guidelines, 322 F. Supp. 2d at 78, after, in part, considering the cost of home detention verses jail:

> The issue is one of degree. Willis has an inordinate number of potentially serious medical conditions. It seems imminently logical the Willis is at an age where these medical conditions will invariably get worse. It seems logical that being away from his support structure, both family and doctors, will invariably exacerbate his conditions. It seems logical that were he to go to jail for three years between the ages of 69 and 71 that he will emerge in substantially worse shape than he is now, if he does not die before completing his sentence. It seems logical that while the BOP can care for him, the costs of that care are bound to escalate. Finally, it seems logical that his conditions at least put him in the zone that enables me to balance the cost of home detention vs. jail, whether home confinement will be "equally efficient as and less costly than incarceration," U.S.S.G. § 5H1.1, or whether "home detention may be as efficient as, and less costly than, prison" as it is described in U.S.S.G. § 5H1.4.

322 F. Supp. 2d at 84-85.

That consideration of costs is, of course, one of the commands of §5H1.1: "age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." Just as was true with the defendant in Willis, Mr. Choudhry is at an age where his health will "invariable get worse." As was true in Willis, too, it seems likely that Mr.

Choudhry would emerge, after completing his sentence, in substantially worse shape than he is now. Given all that, as in <u>Willis</u>, it seems reasonable to "balance the costs of home detention verses jail."

### Mr. Choudhry's Status As A First Time Offender is Significant<br>Under 18 U.S.C. § 3553(a) Sentencing Factors

Beyond what may be permissible under the Guidelines, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a), and the other factors set forth in 18 U.S.C. § 3553(a)(2) support a sentence of probation with a period of home detention. In <u>United States v. Hunt</u>, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that must be considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

As recognized in <u>Hunt</u>, there has been a continuing debate among the courts as to how much weight should be given to one of the listed factors, the Sentencing Guidelines. 459 F.3d at 1183-1184. The decision in <u>Hunt</u>, however, has resolved the debate for the Eleventh Circuit. In the decision, the court rejected "any across-the-board prescription regarding the appropriate deference to give the guidelines." 459 F.3d at 1184. Rather, a "district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in

calculating the defendant's sentence." 459 F.3d at 1185.

As we demonstrate below, the acts which serve as the predicate for Mr. Choudhry's conviction is in stark contrast to his background. Certainly, he has never before been convicted of any crime. Cf. United States v. Lucania, 379 F. Supp.2d 288, 298 (E.D.N.Y.2005) (Sifton, J.) (Post-Booker case where court noted that "Guidelines also do not take into account the inverse relationship between age and recidivism"). Moreover, throughout his life, Mr. Choudhry has been a devoted family man and a trusted, committed, loyal friend to many, offering his assistance whenever needed.

This Court may also freely consider that Mr. Choudhry was the provider emotionally and financially to his extended family who clearly still needs him. *See e.g.,* United States v. Pauley, 511 F.3d 468 (4th Cir. 2007) (affirming 42-month sentence for defendant convicted of possession of child pornography with an advisory guideline range of 78-97 months in part because "besides the criminal conduct at issue, Pauley was a. . . good father"). Likewise, this Court may consider the effect that a lengthy term of incarceration will have on Mr. Choudhry's family. *See, e.g.,* United States v. Lehmann, 513 F.3d 805 (8th Cir. 2008) (affirming district court's consideration of family circumstances in § 3553(a) analysis); United States v. Baker, 502 F.3d 465 (6th Cir. 2007) (same). It is evident from the letters of Mr. Choudhry's family that his arrest and conviction have been devastating.

> Mr Ajmal Choudhry is my maternal grandfather. He was a Taxi driver and use to work at night. He was the only person in whole family who always looked after me. He took me to public parks, libraries, historical places, shopping's, hospitals/doctors and even to my school. He brought candies and toys for me on special occasions like birthdays, Eid ceremonies etc. He had been taking me, my cousins, my aunts and my respected mother for outing. I personally feel that these all activities can help the children like me to become very useful citizen of the present civilized society. Whereas my father Mr Jameel Afzal is also a taxi driver and works at day hours 7 days a week. He is unable to spare his time due to his commitments.

My grandfather is in jail since last two years and my whole family consisting of aunts, uncles and even small children's are going under extreme stress and strain. There is no one who can help me in that way as my grandfather was doing. I feel am deprived of all above said activities since he is in jail. I miss my grandfather a lot. My grandfather was very kind and affectionate person. He love me and I have great love and respect for him.

Keeping in view my few lines it is therefore requested, please took pity on my miserable condition and my grandfather may please be released. I will be grateful to your kind majesty for this act of kindness.

- Mr. Choudhry's granddaughter

*   *   *

Mr Mohammad Ajmal Choudhry is my father in law and real uncle. I was born in Pakistan 1977. I was brought up in a joint family. I married to Shakeel Choudhry (the son of Mohammad Ajmal Choudhry) in 2001. I came to USA in 2004 and since then I am residing with my husband. My uncle is a role model for me. The reason behind is that he gave me the love of my mother. By the blessing of Almighty Allah I became pregnant after the ten years of married life. I was carrying three babies and was advised by the doctors that I should be taken intensive care during that period. Usually mothers take care of these periods and my mother was in Pakistan where as my mother in law had passed away a long time ago. Hence, My uncle (Mohammad Ajmal Choudhry) was the only person who proved himself like my real mother and remained present by me at every step.

I gave birth to three babies at a time and that I know or every mother knows that period .Which cannot be expressed in words only felt. After the birth of three babies me and my uncle brought up them and thanks God they are alive. Now my children are missing their grandfather. At any stage I never felt myself as daughter in law but felt him as my actual parents (father/mother).It is the sincerity and lovely personality of Mr Ajmal Choudhry.

I further certify that he used to look after my children, me and gave us the love. He always supported us financially and took us to public places, parks and historical places. He bought candies and necessities of life for the while family. Unfortunately, his arrest has affected my life and life of my children badly.

- Mr. Choudhry's daughter-in-law

*   *   *

In that society where there is a lot of difference between the poor and rich .Although my family was poor but respected in the village and enjoyed very good relations in the area. My family had never had any strained relations with any one in whole area. My family was also known as reformers, besides this my family always worked for the betterment of women rights and helping poor women in

arranging their marriage ceremonies. Which was very difficult for the poor's in that society of status-co. By virtue of these activities my family was respected by the poor's of the area.

My father was a farmer by profession but when farmer season was over he went to big cities and worked as labor for months and months away from my mother /children's. In this way he earn for his livings. My father lived hand to mouth life. Whatever my father earned he spent on my grandparents, uncles and my sick mother. In the meantime, my mother became sick but there were no hospital facilities in the village. Hence, the hospital facilities were available in the big cities which were very expensive and the poor man like my father was not able to afford that. My father used to borrow money from his friends and spent on my ailing mother. Thereafter, he went abroad and worked hard for years, sent money to my mother. My sisters and I was brought up by my mother. At last my mother succumbed to her sickness and died while my father was in USA at that time. I and my four sisters were left behind. However, my elder uncle Afzal and his wife took pity no us and started looking after us. In 1999, I and my sisters came to USA. My father sent all of us to school in Brooklyn area and it was his strongest wish that we all should become educated citizens of the society. For this he worked day and night. He used to drive taxi at night hours and looked after me and my sisters at day time even he could not get his sleeping hours. He took us to markets for shopping

-        Mr. Choudhry's Son

*                *                *

Mr Mohammad Ajmal Choudhry is younger brother of my father and also my father in law. However, my said uncle always looked after my family and financially supported on every occasion of life. I was married to his elder daughter Tasneem Ajmal . I have three children's. My uncle had taken care of my wife and children. He took her to doctors, markets, shopping's whenever needed. He is the person who brought up my wife and my children. My children's were very much attached to their grandfather. I am self-employed as taxi driver and week in English language and all the matters were taken care of by my uncle. He has always been very kind to me and my family. But unfortunately, his arrest had affected me very badly.

My family is feeling highly depressed and ignored in the community.

-        Mr. Choudhry's nephew

*                *                *

My brother is a very family oriented person, who takes care of not only his family and children but also is very kind to other members of the family.

14

I am one example of his kindness and cooperation. As my late husband was a school teacher in Pakistan and with a family of 6 members it is difficult to fufill at the needs of family with a school teacher's salary.

My brother always stands firm with me in all the lows of my life. He used to send me money almost every month. He always helped to the education of my kids.

- Mr. Choudhry's Sister

Accordingly a sentence substantially below that which a raw Guideline calculation produces would still reflect the seriousness of the offense, to promote respect for the law, and provide just punishment, § 3553(a)(2)(A), and afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). We note of course that in the case of Mr. Choudhry, the Court need not consider the need "to protect the public from further crimes of the defendant," § 3553(a)(2)(c), nor is there any need to provide Mr. Choudhry with "any particular educational or vocational training." 18 U.S.C. § 3553(a)(2)(D).

We respectfully note that a Guideline sentence in this case need not be followed, since the imposition of a sentence below a Guideline sentence would not sacrifice allegiance to the dispositive sentencing factors.

Here, as demonstrated in so many of the letters written to your Honor, the acts of kindness, giving and charity by Mr. Choudhry, went far beyond the "ordinary" and have continued for over 50 years. Not only has Mr. Choudhry given of his own financial means, but person after person who has written to the Court attests to how Mr. Choudhry repeatedly acted selflessly in order to assist others in their time of need, and of his constantly giving of himself in ways that went far and above what is normally expected of a relative, neighbor and citizen. It is respectfully submitted that Mr. Choudhry should been accorded some leniency due to the life he has led, a life that is so out of character with his offense conduct.

**Sentencing Under Booker, Gall, and Kimbrough**

As the Court is now aware, the Federal Sentencing Guidelines are no longer mandatory but one of several factors which the Court must consider in imposing sentence.  See United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005); Gall v. United States, 128 S.Ct. 586 (2007), Kimbrough v. United States, 128 S.Ct. 558 (2007).  Under Booker and its progeny, the Sentencing Guidelines must be calculated and consulted but are no longer mandatory.  Rather, the Court must consider all of these factors in the Federal Sentencing Act, 18 U.S.C. § 3553(a), and appellate courts will review sentences imposed by district courts with "due deference" to determine whether they are reasonable under an "abuse of discretion" standard of review.  See Gall, 128 S.Ct. at 597.

In Booker, the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), apply to the Federal Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines," in the case before the Court. Booker, 125 S.Ct. at 751.  Accordingly, reaffirming its holding in Apprendi, the Court concluded:

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.  Based on this conclusion, the Court further found those provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(c), incompatible with its Sixth Amendment holding. See Booker, 125 S.Ct. at 756.  Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by <u>Booker</u>:

> requires a sentencing court to consider Guidelines ranges, <u>see</u> 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, <u>see</u> § 3553(a).

<u>Booker</u>, 125 S.Ct. at 757.  Thus, under <u>Booker</u>, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C.§ 3553(a).

The Supreme Court has rendered opinions with regard to two additional cases interpreting the Sentencing Guidelines: <u>Gall v. United States</u>, <u>supra</u>, 128 S.Ct. 586 (2007), and <u>Kimbrough v. United States</u>, <u>supra</u>, 128 S.Ct. 558 (2007).

In <u>Gall</u>, the Supreme Court restored broad discretion to district judges by encouraging them to impose the sentence they deem most appropriate after considering all of the sentencing factors set forth in 18 U.S.C. § 3553(a).  Specifically, the Supreme Court explained that while the Guidelines should be "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and instead "must make an individualized assessment based on the facts presented." <u>Gall</u>, 128 S.Ct. at 596-97.  In doing so the Supreme Court rejected the lower court's decision requiring that a below-Guidelines sentence need be justified by "extraordinary circumstances." <u>Gall</u>, 128 S.Ct. at 595.

Similarly, in <u>Kimbrough</u> the Supreme Court held that a district judge may consider the crack/powder disparity when sentencing crack cocaine offenders, and impose a below-Guidelines sentence if it determines that a Guidelines sentence is "greater than necessary" to serve the objectives of sentencing set forth at 18 U.S.C. § 3553(a).  The Supreme Court also rejected the Fourth Circuit's rationale that a sentence outside the Guidelines is "per se unreasonable" because it is based on a disagreement with the crack-powder disparity, stating:

We hold that, under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 621, the cocaine Guidelines, like all other Guidelines, are advisory only, and the Fourth Circuit erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. 18 U.S.C. § 3553(a). In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses.

Kimbrough, 128 S.Ct. at 560.

The Supreme Court's opinions in Gall and Kimbrough make it abundantly clear that the Guidelines are but one of the several factors which a sentencing court must consider in imposing sentence. Instead, for guidance the Supreme Court directed sentencing courts to 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the following factors:

> the nature and circumstances of the offense and the history and characteristics of the defendant [18 U.S.C. § 3553(a)(1)];

the kinds of sentences available [18 U.S.C. § 3553(a)(3)];

any pertinent policy statement … issued by the Sentencing Commission … [18 U.S.C. § 3553(a)(5)(A)];

the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct [18 U.S.C. § 3553(a)(6)]; and

the need to provide restitution to any victims of the offense [18 U.S.C. § 3553(a)(7)].

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the (now-advisory) policy statements in Part H of the Sentencing Guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1; see also United States v. Nellum, Docket No. No. 2:04-CR-30-PS, 2005 W.L. 300073 (N.D.Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing, Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004).

The directives of <u>Booker</u>, <u>Gall</u>, <u>Kimbrough</u> and 18 U.S.C. § 3553(a) make clear that courts may no longer uncritically apply the Guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in <u>Booker</u>, rejecting mandatory Guideline sentences based on judicial fact-finding, and the remedial majority in <u>Booker</u>, directing courts to consider all of the § 3553(a) factors, many of which the [G]uidelines either reject or ignore." <u>United States v. Ranum</u>, 353 F, Supp. 2d 984, 985-86 (ED.Wisc. 2005) (Adelman, J.). As another district court judge has correctly observed, any approach that automatically gives "heavy" weight to the Guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in <u>Booker</u>." <u>United States v. Jaber</u>, 362 F.Supp.2d 365, 371 (D.Mass. 2005) (Gertner, J.).

In light of <u>Gall</u> and <u>Kimbrough</u> it is unquestionable that in every case a sentencing court must now consider all of the Section 3553(a) factors, not just the Guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. Moreover, where the Guidelines conflict with other sentencing factors set forth in 18 U.S.C. § 3553(a), these statutory sentencing factors should generally trump the Guidelines. <u>See</u> <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (arguing that since 18 U.S.C. § 3553[a] requires sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within Guideline range); <u>United States v. Ministro-Tapia</u>, 470 F.3d 137, 142 (2d Cir. 2006) ("if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher").

Thus, the circumstances presented in Mr. Choudhry's case justify a departure from the Sentencing Guidelines. More importantly, now that the decision in <u>United States v. Booker</u>, 543

U.S. 220 (2005) has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, the history and characteristics of Mr. Choudhry show that a period of supervision that includes home detention is "sufficient but not greater necessary to comply with" the goals of sentencing.

## Recommended Sentence

Mr. Choudhry has no prior criminal history and appears to present little risk to anyone. Given the aforementioned circumstances, a sentence of probation with a period of home detention would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,


_____/S/_____
Ying Stafford, Esq.